## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| **Z.M.G.L., for herself and as next friend for A.S.C.G., her minor child,** | |
| *Petitioners*, | **No.** ___20-cv-1436___ |
| *v.* | **Civil Action** |
| **U.S. DEPARTMENT OF HOMELAND SECURITY; CHAD WOLF, in his official Capacity as Secretary of DHS; U.S. IMMIGRATION & CUSTOMS ENFORCEMENT; TONY H. PHAM, in his official capacity as Senior Official Performing the Duties of ICE Director; DANIEL BIBLE, in his official capacity as Director of the ICE Enforcement and Removal Operations San Antonio Field Office,** | |
| *Defendants.* | |

## COMPLAINT SEEKING INJUNCTIVE RELIEF

### PRELIMINARY STATEMENT

1.      This lawsuit seeks to compel the Government to comply with non-discretionary statutory duties and binding regulations that establish simple procedural safeguards against the removal of individuals to countries where their lives are threatened.

2.      Petitioners are an indigenous Ecuadoran mother, Z.M.G.L.,[1] and her four-year-old daughter, A.S.C.G. Petitioners have repeatedly and recently suffered rape, physical abuse, and death threats in Ecuador. In 2019 Petitioners fled Ecuador to seek protection in the United States.

3.      In July 2019, Petitioners were subjected to the Migrant Protection Protocols ("MPP"), whereby asylum-seekers are made to wait for months in northern Mexico while their

---

[1] Petitioner, Z.M.G.L., files a motion seeking leave to use a pseudonym in this litigation. *See* ECF Dkt. 2.

immigration cases are processed. Shortly thereafter, A.S.C.G. became very ill. Unable to obtain medical attention in Mexico, Petitioners returned to Ecuador. As a result, Petitioners were unable to attend a hearing in their immigration case and, on December 2, 2019, an Immigration Judge ordered Petitioners removed *in absentia*.

4.      Because Petitioners were outside the country with an enforceable order requiring their exit, they were removed. *See U.S. v. Ramirez-Carcamo*, 559 F.3d 384, 389 (5th Cir. 2009) ("No matter whether the removal order comes first and the alien then departs, or, as here, the departure comes first and then removal is ordered in absentia, the alien ultimately is outside the country with an enforceable order requiring that he have exited. When both have occurred, the person is "considered to have been ... removed in pursuance of law.").

5.      While in Ecuador Petitioners again suffered persecution and torture. The man who has persecuted Z.M.G.L. for years tracked her down, choked her, and broke A.S.C.G.'s arm. Rather than intervene to prevent further abuse, Ecuadoran police told Z.M.G.L. that she was a liar, like all "Indians." Fearing for their safety, Petitioners fled again for the United States. On or about October 18, 2020, Petitioners entered the United States by crossing the river and again turned themselves in to immigration officials. Petitioners desperately desire to apply for protection against a second removal to Ecuador and have expressed their fear of returning to their home country to immigration officials.

6.      When an individual illegally enters the United States "after having been removed or having departed voluntarily, under an order of removal, the prior order is reinstated…." 8 U.S.C. § 1231(a)(5). If the individual subject to the reinstated removal order "expresses a fear of returning to the country designated in that order" she "shall be immediately referred to an asylum officer" to determine whether she has a reasonable fear of persecution or torture and, ultimately, whether

she is eligible for withholding of removal under 8 U.S.C. § 1231(b)(3) or protection under the Convention Against Torture ("CAT"). 8 C.F.R. § 241.8(e). Alternatively, immigration officials may simply refer the individual for ordinary removal proceedings in accordance with 8 U.S.C. § 1229a. *Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013).

7.      In this case, Defendants have made a final decision to simply remove Petitioners to Ecuador without providing access to any procedures to determine whether they are eligible for withholding of removal or protection under CAT. This violates 8 U.S.C. §§ 1231(a)(5), 1231(b)(3), and Defendant's own regulations, 8 C.F.R. §§ 208.31, 241.8(e). Petitioners urge this Court to order Defendants to comply with these statutory and regulatory mandates and preserve the status quo by staying Petitioners' removal while Defendants obligation to comply with U.S. immigration statutes and regulations is litigated.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1346 (federal defendant); the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*; the Immigration & Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and its implementing regulations (Title 8 of the C.F.R.); the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361; and the United States Constitution.

9.      The Administrative Procedure Act ("APA"), 5 U.S.C. § 702, waives Defendants' sovereign immunity where, as here, federal officials have acted in violation of federal law.

10.     The Court has authority to grant injunctive relief pursuant to 5 U.S.C. §§ 702 and 706, and FED. R. CIV. P. 65.

11.     Venue is proper in the Western District of Texas under 28 U.S.C. §§ 1391(b)(2) and (e)(1) because a significant number of the events relevant to this action took place in this

District.

## PARTIES

12.     Petitioner Z.M.G.L. is a citizen of Ecuador who seeks relief in this case on behalf of herself and her four-year-old daughter, A.S.C.G, who is also a citizen of Ecuador. Both are presently detained by Defendants at the South Texas Family Residential Center in Dilley, Texas, and threatened with imminent removal from the United States in violation of federal statutes and regulations. Counsel has made Petitioners' full names known to the Government.

13.     Defendant U.S. Department of Homeland Security ("DHS") is the federal executive agency responsible for enforcing U.S. immigration law.  Its component agencies include U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border Protection ("CBP"); and U.S. Citizenship and Immigration Services ("USCIS").

14.     Defendant Chad Wolf is the Acting Secretary of DHS and is sued in his official capacity. Defendant Wolf has ultimate responsibility for the administration and enforcement of the immigration laws by DHS agencies pursuant to 8 U.S.C. § 1103. In this capacity, Defendant Wolf has direct authority over all policies, procedures and practices relating to the apprehension of immigrants at the United States border and any subsequent removal proceedings.

15.     Defendant ICE carries out removal orders and oversees immigration detention throughout the United States.  ICE's responsibilities also include referring individuals who express a fear persecution or torture upon return to their country of origin to USCIS for the scheduling of reasonable fear interviews subsequent to the issuance of an order of reinstatement, prior to the individual's removal from the United States.

16.     Defendant Tony H. Pham is the Senior Official Performing the Duties of the Director on behalf of ICE and is sued in his official capacity. Respondent Pham directs and

4

oversees ICE's responsibilities carrying out removal orders and detaining non-citizens throughout the United States.  In this capacity he is also tasked with ensuring ICE refers individuals who express a fear persecution or torture upon return to their country of origin to USCIS for the scheduling of reasonable fear interviews subsequent to the issuance of an order of reinstatement, prior to the individual's removal from the United States.

17.     Defendant Daniel Bible is the Director of the San Antonio Field Office of ICE Enforcement and Removal Operations and is sued in his official capacity.  As such, Defendant Bible oversees local compliance with ICE's legal obligations, including referral procedures for reasonable fear interviews, and oversees removal operations that are scheduled for individuals who are detained at the South Texas Family Residential Center in Dilley, Texas.

18.     This document refers to Defendants collectively as "the Government."

## STATEMENT OF FACTS

### I. Statutory and Regulatory Background

19.     Congress prohibits the removal of non-citizens to any country where their "life or freedom would be threatened" because of their "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3); *see also* 8 U.S.C. § 1231 note (describing U.S. policy "not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture.").

20.     Congress and Executive agencies have developed procedures to ensure that this prohibition is followed and to ensure non-citizens who express fear of persecution or torture if removed to their home countries have the opportunity to seek protection in the United States.

21.     One such procedure occurs when a non-citizen who has previously been removed or who voluntarily departs, under a removal order, subsequently unlawfully reenters the United States. In this situation immigration officials may reinstate the prior removal order pursuant to 8 U.S.C. § 1231(a)(5). The individual subject to reinstated removal order is not eligible for asylum but, to comply with 8 U.S.C. § 1231(b)(3), may still be eligible for withholding of removal or protection under CAT. *See Ramirez-Mejia v. Lynch*, 794 F.3d 485, 489 (5th Cir. 2015). If the individual expresses fear of persecution or torture upon removal to their home country, she "shall be immediately referred to an asylum officer for an interview to determine whether [she] has a reasonable fear of persecution or torture…." 8 C.F.R. § 241.8(e); *see also* 8 C.F.R. § 208.31. Often this scenario is referred to as "withholding-only" proceedings, because the only protection the individual may seek is withholding of removal or protection under CAT.

22.     Alternatively, immigration officials may in their plenary authority refer the individual for ordinary removal proceedings in accordance with 8 U.S.C § 1229a. *Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013); *Lara-Aguilar v. Sessions*, 889 F.3d 134, 143-44 (4th Cir. 2018).

23.     For a noncitizen subject to reinstatement of a prior removal order who expresses a fear of persecution or torture if returned to their home country, Defendants' binding regulations set out a procedure to determine whether the individual qualifies for withholding of removal or protection under CAT. *See* 8 C.F.R. § 208.31. First, the individual "shall be referred to an asylum officer for a reasonable fear determination." 8 C.F.R. § 208.31(b). A USCIS asylum officer then conducts a screening interview and decides whether the individual has a "reasonable" basis to fear persecution or torture upon return to the country of origin. *See* 8 C.F.R. § 208.31(c).

24.     If the asylum officer determines that the individual's fear is reasonable, USCIS then refers the case to an Immigration Judge from the Executive Office for Immigration Review ("EOIR") for full consideration of the claim. *See* 8 C.F.R. § 208.31(e). If not, the non-citizen has the opportunity to participate in a negative reasonable fear review hearing before the Immigration Judge, who reviews the asylum officer's reasonable fear finding and either affirms or vacates the asylum officer's decision. 8 C.F.R. § 208.31(g). If the asylum officer's decision is affirmed the individual may be deported. 8 C.F.R. § 208.31(g)(1). If vacated, the individual is placed in withholding-only proceedings before the Immigration Court. 8 C.F.R. § 208.31(g)(2).

25.     Withholding of removal and protection under CAT are mandatory, not discretionary. The Government cannot remove an individual who qualifies for these protections. *See Nuru v. Gonzales*, 404 F.3d 1207, 1216 (9th Cir. 2005) ("If an alien meets his burden of proof regarding future torture, withholding of removal is mandatory under the [CAT] implementing regulations, just as it is in the case of a well-founded fear of persecution").

**II. Petitioners Seek Protection from Persecution and Torture**

26.     Petitioners are natives and citizens of Ecuador. Petitioners' first language is Quichua.

27.     Petitioners initially fled Ecuador in the summer of 2019 after Z.M.G.L. experienced severe violence, threats, and surveillance that caused her to fear for her and her child's safety. As a child, Z.M.G.L. was targeted for repeated rapes by her persecutor, a man who belonged to a dangerous criminal organization.

28.     Because of her indigenous ethnicity, Z.M.G.L.'s persecutor believed he could do whatever he wanted to her, and he did. Her persecutor forcibly impregnated Z.M.G.L. when she was just 13 years old. At the time, Z.M.G.L.'s parents succeeded in reporting the crime to the

police and her persecutor was arrested and imprisoned. Z.M.G.L. gave birth to a child as a result of this rape.

29.     After her persecutor was jailed, Z.M.G.L. was surveilled and received death threats from armed gang members. Z.M.G.L. and her family moved frequently between provinces in Ecuador to try to escape, but were tracked down in each new location.

30.     In 2019, gang members told Z.M.G.L. that her persecutor was due to be released from prison soon and would come kill her. Fearing for her life, Z.M.G.L. fled Ecuador with her daughter to seek protection in the United States.

31.     After crossing the U.S.-Mexico border, Z.M.G.L. and A.S.C.G. were detained by Border Patrol agents on July 15, 2019, placed in removal proceedings, and returned to Mexico to await their immigration court hearing under Defendants MPP program.

32.     While Petitioners resided in Ciudad Juarez, Mexico, A.S.C.G. became ill and required medical care. Z.M.G.L. sought help at a Mexican hospital, but was unable to obtain treatment for her daughter. Unable to obtain necessary medical care, Z.M.G.L. made the difficult choice to return to Ecuador. As a result, on December 2, 2019, Petitioners failed to appear at their scheduled immigration court hearing in El Paso, Texas and were ordered removed *in absentia*.

33.     After Z.M.G.L. and A.S.C.G. return to Ecuador, A.S.C.G.'s health improved. However, after their return, the man who raped Z.M.G.L. was released from prison. He tracked Petitioners down and brutally attacked them, choking Z.M.G.L. and breaking A.S.C.G.'s arm while her mother watched. Z.M.G.L.'s persecutor said this was "revenge" for her involvement in the proceedings that led to his prior incarceration.

34.     Z.M.G.L. reported the attack to Ecuadoran police, but they told her "all Indians are liars," that they did not believe her, and they refused to take her report. The police's refusal to help

Petitioners on account of their indigenous race is consistent with worsening relations between indigenous groups and state authorities in Ecuador after the Ecuadorian government used extreme force tactics to quell indigenous-led protests throughout 2019.

35.     Following this attack, Z.M.G.L and A.S.C.G. again fled Ecuador for the United States. They entered the United States without inspection on or about October 18, 2020 and were taken into custody Border Patrol agents shortly thereafter. Petitioners were transferred to ICE custody and detained at the South Texas Family Residential Center in Dilley, Texas and eventually secured *pro bono* immigration counsel through the Asylum Defense Project's Proyecto Dilley.

**III. Defendants Refuse to Provide Access to Procedures Implementing 8 U.S.C. § 1231(b)(3)**

36.     Petitioners' immigration attorney asserted their fear of return and requested a reasonable fear interview on their behalf. Defendants responded through electronic correspondence on October 29, 2020, from Ms. Veronica Segovia, Assistant Chief Counsel with DHS's Office of the Principal Legal Advisor, that ICE believes the December 2, 2019, *in absentia* removal order "has not been executed" and "will proceed accordingly."

37.     Defendants have made a final decision to deny Petitioners access to mandatory procedures for determining whether they are eligible for withholding of removal or protection under CAT.  ICE intends to summarily remove Petitioners from the United States under the auspices of "executing" their December 2, 2019 *in absentia* removal order for the first time.

38.     Defendants' position is contrary to the INA. Petitioners have been removed pursuant to or have voluntarily departed under the December 2, 2019 *in absentia* removal order. Federal law makes clear that any individual for whom there exists an executable removal order, and who is outside the United States, "shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were

defrayed or the place to which he departed." 8 U.S.C. § 1101(g); *see also Ramirez-Carcamo*, 559 F.3d 384, 389 (5th Cir. 2009); *see also Toora v. Holder*, 603 F.3d 282, 285-86 (5th Cir. 2010) (person who left the U.S. after service of NTA but before receiving a removal order was considered removed for purposes of departure bar on motions to reopen).

39.    Although Petitioners meet all three predicates for their orders of removal to be reinstated under 8 U.S.C. § 1231(a)(5) – a prior removal order, a removal or departure from the United States under that order, and a subsequent illegal reentry – DHS has not served Petitioners or their counsel with an order of reinstatement. *See* 8 U.S.C. § 1231(a)(5); 8 C.F.R. §§ 241.8(b) (mandating that DHS provide written notice of reinstatement determination to the individual), 292.5(a). Defendants also have not referred Petitioners for ordinary removal proceedings under 8 U.S.C. § 1229a.

40.    Instead, Defendants have made a final decision to remove Petitioners as early as Friday, December 18, 2020, without allowing any further consideration of their claims for protection from removal.

## IV. Petitioners' Efforts to Seek Relief from the Immigration Judge

41.    On or about October 29, 2020, Petitioners filed a motion to reopen and rescind their December 2, 2019 *in absentia* removal orders in Immigration Court. On December 10, 2020, Immigration Judge Nathan L. Herbert determined that 8 U.S.C. § 1231(a)(5) bars reopening because Petitioners were removed of departed voluntarily, under an order of removal, and therefore that the removal order is "not subject to being reopened or reviewed." Immigration Judge Herbert also determined that he did not have authority to order DHS to refer Petitioners for a reasonable fear interview.

42.     Petitioners have no other adequate remedy at law compel Defendants to comply with statutory and regulatory mandates requiring access to procedures whereby Petitioners may have their claims for protection from removal heard.

## CAUSES OF ACTION

43.     All of the foregoing allegations of fact are incorporated as if repeated to support each of the following causes of action.

## COUNT 1: Administrative Procedure Act

44.     Defendants have made a final decision to not reinstate Petitioners' prior *in absentia* removal order, to not refer Petitioners to an asylum officer for a reasonable fear interview, and to not refer Petitioners for withholding-only proceedings conducted in accordance with 8 U.S.C. § 1229a. This constitutes final agency action for which there is no adequate remedy at law. Defendants have no discretion to continue refusing to comply with the INA and binding agency regulations.

45.     Because, as set out above, Defendants' actions in denying Petitioners access to reasonable fear proceedings violates Due Process, this Court may hold unlawful and set aside this agency action as "contrary to constitutional right." 5 U.S.C. § 706(2)(B).

46.     Because Defendants' actions in refusing to reinstate Petitioners' *in absentia* removal orders violates 8 U.S.C. § 1231(a)(5) and because Defendants' actions in seeking to remove Petitioners to Ecuador without providing access to reasonable fear proceedings violates 8 U.S.C. § 1231(b)(3), this Court may hold unlawful and set aside this agency action as "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C)

47.     Because Defendants actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" this Court may hold unlawful and set aside Defendants' failure to refer Petitioners for reasonable fear proceedings. 5 U.S.C. § 706(2)(A).

## COUNT 2: Due Process

48.     All persons on U.S. soil, including Petitioners, are protected by Due Process under the U.S. Constitution's Fifth Amendment.

49.     Due process forbids Defendants from arbitrarily causing an alien who has entered the United States to be deported without giving her all opportunity to be heard upon questions involving her right to be and remain in the United States.  *U.S. v. Benitez-Villafuerte*, 186 F.3d 651, 656 (5th Cir. 1999).

50.     Congress prohibits the removal of individuals to countries where their lives or freedom would be threatened on account of their race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3).

51.     By refusing to refer Petitioners to an asylum officer to determine whether they have a reasonable fear of persecution or torture if removed to Ecuador or, alternatively, referring Petitioners for withholding-only proceedings conducted under 8 U.S.C. § 1229a,  Defendants deny Petitioners their right to be heard on their eligibility to remain in the United States in violation of Due Process.

## REQUEST FOR RELIEF

WHEREFORE, and in light of the foregoing, Petitioners prays that the Court:

A.     Preserve the status quo, and immediately stay Petitioners' removal until the Court can decide whether Defendants have complied with their legal duties;

B.      Order Defendants to comply with their legal duties and provide Petitioners access

to procedures for determining their eligibility for withholding of removal and protection under

CAT;

C.      Grant such other and further relief, as the Court deems appropriate and just; and

D.      Grant attorney's fees and costs of court.

Dated: December 17, 2020.                    Respectfully submitted,

                                             TEXAS RIOGRANDE LEGAL AID, INC.

                                             */s/ Peter McGraw*
                                             Peter McGraw
                                             State Bar No. 24081036
                                             1206 E. Van Buren Street
                                             Brownsville, Texas 78520
                                             Tel. (956) 982-5540
                                             Fax. (956) 541-1410
                                             pmcgraw@trla.org


                                             ASYLUM DEFENSE PROJECT
                                             */s/ Shalyn Fluharty*
                                             Shalyn Fluharty*
                                             CA 270056
                                             1111 N. Main Ave.
                                             San Antonio, TX 78212
                                             Tel: (917) 364-3419
                                             Email: shay@caraprobono.org


                                             */s/ Brianna Rennix*
                                             Brianna Rennix*
                                             TX 24110263
                                             1111 N. Main Ave.
                                             San Antonio, TX 78212
                                             Tel: (917) 364-3419
                                             Email: brianna@caraprobono.org


                                             **Applications for admission pro hac vice*
                                             *forthcoming*